Filed 12/18/13  Michelle B. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE B., | F068102 |
| Petitioner, | |
| v. | (Super. Ct. No. JP000454) |
| THE SUPERIOR COURT OF MERCED COUNTY, | |
| Respondent; | |
| MERCED COUNTY HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |
| JOHN B., | F068103 |
| Petitioner, | |
| v. | (Super. Ct. No. JP000454) |
| THE SUPERIOR COURT OF MERCED COUNTY, | |
| Respondent; | **OPINION** |
| MERCED COUNTY HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

**THE COURT**[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review. John D. Kirihara, Judge.

Michelle B., in pro. per., for Petitioner.

John B., in pro. per., for Petitioner.

No appearance for Respondent.

James N. Fincher, County Counsel, Sheri L. Damon, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

Petitioners John B. and Michelle B., in propria persona, seek an extraordinary writ from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] terminating their reunification services and setting a section 366.26 hearing as to their seven-year-old daughter, D.B.[2] They contend they substantially completed their reunification services and therefore the juvenile court erred in terminating them. They further contend their reunification services were inadequate and their due process and civil rights were violated. They seek an order returning D.B. to their custody. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In September 2011, a social worker from the Merced County Human Services Agency (agency) and a police officer responded to a report that John and Michelle, husband and wife, were mentally unstable and unable to care for Michelle's six-year-old

---

[*]    Before Levy, Acting P.J., Kane, J. and Poochigian, J.

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    William and Michelle filed separate writ petitions, which we consolidated on our own motion.

2

twins, J.R. and S.R., and Michelle and John's then five-year-old daughter, D.B. The mandated reporter said John had a videotape of Michelle intoxicated and vials of semen he alleged Atwater police officers left at his home. John also said his family was being terrorized and he had to stab someone with a buck knife.

The social worker observed the home to be in poor condition. John explained they had not cleaned because the dirty stains on the sofa and carpet were semen left by Atwater and Merced police officers who raped them and he wanted to preserve the evidence. John also stated that Kevin W. and Jason S. from a Merced radio station raped Michelle while he was unconscious. John stated the family's cat was killed by Jason because the cat would not let Jason rape Michelle. A dead cat was later found in a box wrapped in a blanket. J.R. stated that Jason killed the cat and he saw the cat spinning in the dryer.

Michelle confirmed she and John were raped by Kevin and Jason, although the details varied slightly from John's account. As to the cat, Michelle said she was sexually assaulted in the laundry room and the cat was trained like a dog. The people who assaulted her put the cat in the dryer after they "pummeled" the cat. The cat had to be euthanized. Michelle and John believed the cat had DNA evidence from the person who attacked Michelle, so they preserved the cat in rock salt and placed it in the freezer.

The social worker observed that the children were delayed in their speech and social development. Michelle said she was homeschooling them but did not provide verification.

The social worker took the children into protective custody and placed them in foster care. The agency filed a dependency petition on their behalf, alleging John and Michelle's delusional state placed the children at a substantial risk of harm. The petition identified William as the twins' father. There were no allegations as to him.

In November 2011, the juvenile court exercised its dependency jurisdiction and ordered reunification services, including psychological evaluations for John, Michelle, William and the three children.

In December 2011, clinical psychologist, Michael B. Jones, evaluated William and the children. Dr. Jones concluded William was capable of benefitting from reunification services. Dr. Jones concluded the children suffered significant developmental delays attributable in part to their home environment.

In January 2012, Dr. Jones evaluated John and Michelle and diagnosed them both with paranoid schizophrenia, which he opined rendered them completely unable to parent the children. He stated that John and Michelle were unable to separate their delusional thoughts and related actions from the children and that their combined psychotic thinking created a highly psychopathological home environment in which the children's physical and psychological needs could not be met. He opined John and Michelle were incapable of utilizing reunification services and that John's psychological disability was severe and deeply entrenched.

In light of Dr. Jones's findings, the juvenile court ordered reunification services for William and a second psychological evaluation for John and Michelle to determine if they could benefit from reunification services.

Dr. Montalvo[3] conducted the second set of psychological evaluations. He found no clear evidence that John suffered from a diagnosable mental disorder and made a provisional finding that Michelle did. He recommended they complete a medication evaluation and participate in intensive individual psychotherapy.[4]

---

[3] Dr. Montalvo's full name is not contained in the appellate record.

[4] The appellate record does not contain Drs. Jones and Montalvo's psychological evaluations of John and Michelle. Their findings, however, are summarized by the agency in its June 2012 status report.

In June 2012, the juvenile court conducted the six-month review hearing and amended John and Michelle's reunification plans to include a parenting program, a medication evaluation, and a mental health assessment to be conducted by therapist Bret Green, LMFT. The court set the 12-month review hearing for December 2012.

By December 2012, John and Michelle had completed a parenting program and Michelle completed an assessment with Bret Green. Green diagnosed Michelle as having a delusional disorder (persecutory type) and believed it possible that she and John had a shared delusional disorder. He also believed the children would be at risk in her care until her paranoia abated. He recommended she complete a physical examination and consult a psychiatrist for a medication evaluation.

John refused to see Green and chose to be evaluated by John Luchok, LCSW. Luchok diagnosed John as having a delusional disorder (persecutory type). He did not believe John presented any danger to the children, despite his fixed delusional system, and that John had the appropriate parenting skills and resources to care for them.

The 12-month review hearing, originally set for December 2012, was convened as a contested hearing in June 2013. The agency's recommendation going into the hearing was to terminate reunification services for John and Michelle but continue them for William.

Luchok testified John had a fixed delusion, explaining that John had a fixed belief about a specific event–the assault and rape–he held to be true. According to Luchok, John did not express any thought disorder on subjects other than people breaking into his house. Luchok believed a person with a fixed delusion could properly parent a child but admitted not knowing how John and Michelle's delusions affected the children. He also said his conclusion was based only on information provided by John.

Following Luchok's testimony, the juvenile court continued the hearing and reconvened it in September 2013. In the interim, the court appointed John and Michelle each a guardian ad litem (GAL) and appointed new counsel for John.

In September 2013, the juvenile court convened the continued and contested 12-month review hearing. Michelle's GAL testified he visited John and Michelle at their home the day before and found the condition of the home to be suitable for the children. During the visit, John told the GAL that people posing as police officers invaded his home and attacked his family.

At the conclusion of the hearing, the juvenile court dismissed the case as to J.R. and S.R. and granted William custody of them. The court found the agency provided reasonable services, terminated John and Michelle's reunification services as to D.B. and set a section 366.26 hearing. This petition ensued.

## DISCUSSION

John and Michelle contend the juvenile court violated their civil rights and due process rights. They also contend their reunification services were inadequate, nonetheless they substantially completed them. Therefore, they argue, the juvenile court erred in finding they were provided reasonable services and in terminating them.

We begin with John and Michelle's claims that their rights were violated. There is no evidence on the record that such violations occurred and John and Michelle do not explain how their rights were violated or point to sections of the appellate record to support their claims. California Rules of Court, rule 8.452 (rule) requires a petitioner to support each point of error with argument, citation to legal authority and citation to the record. Though this court will construe a petition in favor of reaching the merits of a claim of error (rule 8.452(a)(1)), we are not required to develop a petitioner's argument (*In re Sade C.* (1996) 13 Cal.4th 952, 994) and will not do so on such generalized statements.

As to the reasonableness of reunification services, John and Michelle do not specify in what way the services provided were not reasonable. In other words, they do not claim the services ordered were not tailored to the unique needs of their family or identify other services that if ordered would have increased their chances of reunifying.

6

Nor do they claim the agency failed to assist them in accessing the services the court ordered.

Further, we have reviewed the record and conclude substantial evidence supports the juvenile court's reasonable services finding. The agency removed the children out of concern for John and Michelle's mental instability. Subsequently, the juvenile court ordered mental health services designed to identify and treat any mental health issues. In addition, the agency initiated the proper referrals and complied with the juvenile court's visitation order. On this record, we find no error in the juvenile court's finding John and Michelle were provided reasonable services.

Finally, we also conclude the juvenile court properly ruled in terminating John and Michelle's reunification services. When the juvenile court removes a child from parental custody, it must provide services designed to reunify parent and child. However, services are not limitless; they are limited to 18 months from the date the child was originally removed from parental custody. (§ 361.5, subd. (a)(3).) John and Michelle received 24 months of services. Further, there is no guarantee that completing the services will result in the return of the child. Ultimately, the juvenile court must protect the child and act in the child's best interest. (*In re Dustin R*. (1997) 54 Cal.App.4th 1131, 1141, 1142.)

In this case, D.B. and her siblings were removed because John and Michelle shared a delusion that people were entering their home and attacking and raping them. Their delusion persisted and the effects harmed the children profoundly, resulting in their developmental delays and fear. Under the circumstances, the juvenile court could not safely return D.B. to John and Michelle's custody and, given the stage of the proceedings, had little choice but to terminate reunification services and set a section 366.26 hearing. (§ 366.21, subd. (g)(4).)

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

7